# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ROSA DUNSTON,**

**Plaintiff,**

**-vs-**                                                   **Case No.  6:04-cv-1550-Orl-DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

**Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of Defendant's denial

of Plaintiff's application for social security benefits.  For the reasons set forth herein, the decision of

the Commissioner is **REVERSED** and the matter is **REMANDED** to the Commissioner for further

proceedings.

### PROCEDURAL HISTORY

On June 21, 2001, Plaintiff filed an application for supplemental security income ("SSI")

under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, alleging disability due to hip

replacement surgery, low back pain, and high blood pressure (R. 48-50, 63, 208).  The application

was denied initially, and upon reconsideration.  Plaintiff requested and received an administrative

hearing,[1] and an administrative law judge ("the ALJ") issued an unfavorable decision on January 15,

---

[1] The Commissioner erroneously states in her brief that at the administrative hearing, "Plaintiff testified while represented by an attorney." (Doc. No. 18 at 2).  In fact, Plaintiff was represented by a non-attorney disability claim consultant (R. 178, 181).  The misstatement is of no moment, however, as the Court reverses on other grounds.

2004 (R. 9-20).  Plaintiff's request for review was denied by the Appeals Council (R. 4-6), making

the ALJ's decision, the final decision of the Commissioner.

Plaintiff filed the instant action (Doc. No. 1), the parties have briefed the issues, and the matter

is now ripe for review.

### NATURE OF DISABILITY CLAIM

Plaintiff claims a disability onset date of August 1, 1993, due to her hip replacement and leg

injury (R.48, 63).  As Plaintiff applied for SSI benefits on June 21, 2001, however, and could not

receive SSI benefits prior to the month when she filed her application,[2] the relevant period of time

for determination of disability is June 2001 through the date of the decision.

### Summary of Evidence Before the ALJ

Plaintiff was born in 1954, was forty-nine years old at the time of the decision, with a ninth

grade education and past work experience in a plant nursery (R. 76, 186, 196).  Plaintiff last worked

in 1988 (R. 76).

According to the medical records, Plaintiff injured herself in an automobile accident in 1994.

On August 14, 1994, Plaintiff was seen by Kevin Cox, M.D., for a consultation following her accident

(R. 129).   The impression was transverse medially displaced left acetabular fracture involving

comminution of the dome and extension in the posterior column inferiorly; comminuted spiral

fracture of the left distal one-half to distal one-third tibia, with no fibular fracture evident; 15 cm

laceration of the medial aspect of the right knee, with no fracture evident; superficial laceration to the

left lower extremity, scattered abrasions and contusion; blunt thoracoabdominal trauma; and closed

---

[2]*See* 20 C.F.R. § 416.340.

head injury.  Plaintiff underwent open reduction and internal fixation ("ORIF") of the left acetabulum, removal of the pin of the left femur and closed reduction and casting of the left tibia fracture on August 22, 1994 (R.127), and was discharged from the hospital on August 30, 1994.  *Id.*

On follow-up visit on September 8, 1994, Plaintiff's wounds were well-healed, without signs of infection, and x-rays of the left tibia demonstrated good alignment (R. 127).  On October 6, 1994, Plaintiff reported some mild pain in her left hip (R. 126).  On return visit on October 27, 1994, Plaintiff continued to note hip pain.  Physical examination revealed normal alignment, but tenderness on rotation (R. 126).  Concern was expressed that Plaintiff might be developing post-traumatic arthritis.

On a return visit on November 23, 1994, Dr. Cox noted improvement (R. 125), with exam demonstrating "virtually unrestricted" internal and external rotation of the hip.  X-rays demonstrated early union of the tibial shaft fractures.  *Id.*  On December 12, 1994, Plaintiff reported that her left leg was doing well and "essentially having no pain" (R. 125), but she was having mild pain in her left groin area and was continuing to use a walker.  X-rays of the left tibia showed good alignment and union of the fractures.  *Id.*  X-rays of the pelvis, however, showed narrowing of the superior joint space.  On March 17, 1995, Dr. Cox prescribed physical therapy in order to work on range of motion and to progress Plaintiff to use of a cane (R. 124).

Plaintiff proceeded to undergo physical therapy and returned to Dr. Cox in April and June 1995 (R. 123-24).  At the June visit, Dr. Cox noted that Plaintiff would likely need a total hip replacement in the future (R. 122).  Plaintiff continued to have hip pain, and underwent a second opinion, with respect to hip replacement (R. 122).

Plaintiff was seen by Dr. Cox on August 17, 1995 (R. 121-22). He discussed the fact she developed post traumatic arthritis of the left hip and that at some point she would definitely need an arthroplasty. He opined that she was at more risk of failure due to her young age, but thought with "suitable restriction of activity such as vigorous sports and heavy lifting type of work that she should experience a good result." (R. 121).

The medical record reveals no treatment notes from any source until Plaintiff returned to Dr. Cox on August 1, 1997, indicating that she was interested in pursuing her total hip replacement (R. 120).[3] Physical examination demonstrated slight shortening of the left lower extremity, with good range of motion of the ankle and knee, good peripheral pulses and intact sensation. X-rays of the pelvis and hip demonstrated narrowing of the joint hip space.

Plaintiff returned for a "post-operative" visit on October 10, 1997, thus indicating that she did undergo the hip replacement (R. 120). Her wound was benign, and her hip was clinically reduced. X-rays were deemed satisfactory and Plaintiff's neurovascular status was intact. Assessment was status post total hip arthroplasty left. (R. 119).

Records from Dr. Cox dated November 14, 1997, indicated that Plaintiff had complaints of tingling, burning type pain on the top outer aspect of the left foot, but reported her left hip to be doing well (R. 119). Physical examination revealed hyperesthesia along the superficial peroneal nerve distribution on the foot, with motor function intact. Dr. Cox opined that this would improve over the future, and directed Plaintiff to physical therapy.

---

[3]In his notes, Dr. Cox mentions that Plaintiff was being treated for her hypertension by Dr. Curtwright (R. 120). The record does not contain any medical records from Dr. Curtwright. While this would normally merit a remand, the fact that the records are at least four years prior to the relevant date for determination of disability mitigates against any harm from the error.

Plaintiff did not keep her appointments for December 1997, January 1998, or February 3, 1998 (R. 119).

Plaintiff returned to Dr. Cox on February 5, 1998, stating that she was doing "good." (R. 118). On examination, Plaintiff walked with a cane with only a mild antalgic gait on the left lower extremity, and sensation and motor function were intact.  X-rays indicated the arthroplasty was in good position, without evidence of loosening.  Plan was to refill her prescription for pain medication, "which she takes infrequently, as needed" and to follow-up in three months.

On April 30, 1998, Plaintiff returned to Dr. Cox, complaining of low back pain with left lower leg pain, since the past Monday (R. 117).  Physical examination demonstrated tenderness in the iliolumbar area with trigger points in the left SI joint and sciatic notch.  Lasegue's was positive on the left side for sciatic type pain. She had a slight decrease in her left plantar flexion compared to the right. The impression was sciatica and rule out lumbar disc syndrome. *Id.*  Plaintiff was to return in one week.

The administrative record contains no further notes from Dr. Cox or other treating source prior to Plaintiff's filing of the application for benefits.

Sam Ranganathan, M.D. performed a consultative examination on Plaintiff August 27, 2001, at the request of the Commissioner (R. 135).  Plaintiff reported that she was unable to work due to pain in the left hip area, and low back pain.  Dr. Ranganathan referred to Dr. Cox's reports for details of Plaintiff's orthopedic history. Plaintiff reported that she could go to the grocery store and come back, but could not go to the mall.  She reported that she could sit for 30 minutes and stand for 30 minutes at times.  Examination revealed that grip strength was 5/5, and gross/fine manipulations were well preserved (R. 136).  Motor system strength on right thigh flexion was 2 to 3/5, the rest 4/5.  Her

sensory system showed decreased sensation to touch in the left foot.  Reflexes were 2+ and equal bilaterally, except were 1+ in the left ankle.  Plaintiff was able to walk without assistive devices, but had difficulty with tandem, heel and toe walking.  MSK was positive in the left leg at 40 degrees in the lying down position.  Mild tenderness was elicited in the left mid paralumbar area.  She was able to get on and off the examination table slowly, and needed help when she was trying to get up from the supine position.  After range of motion testing of the left hip and straight leg raise testing, she had tears in her eyes secondary to pain.  Repetitive muscle testing caused fatigue.  *Id.*  The impression was status post left hip arthroplasty and lumbosacral spine sprain.   Dr. Ranganathan opined that Plaintiff could stand and walk for less than 2 hours per day and would need frequent breaks.  Plaintiff could sit less than 6 hours per day.  She could lift and carry 10 pounds frequently and occasionally.  There were frequent postural limitations secondary to her musculoskeletal condition, and no manipulative limitations.  Plaintiff had some workplace environmental limitations, mainly heights and driving (R. 136).

At the request of the Commissioner, Alex Perdomo, M.D., performed a consultative examination on Plaintiff on September 4, 2001 (R. 139-140).  Examination of her left lower extremity revealed it was 1½ inches shorter than her right lower extremity, with a slight outward curving of the mid tibia.  Plaintiff had full range of motion in the upper and lower extremities, although Dr. Perdomo noted painful range of motion of the left hip and decreased range of motion of the thoracolumbar spine (R. 139-140).  Neurological examination indicated normal sensory, motor and deep tendon reflexes, and normal gait was noted.  Her examination also revealed significantly high blood pressure, which was felt to account for her complaints of headache (R. 140).  Assessment was history of

chronic left hip and lower extremity pain; severe hypertension, headaches likely secondary to hypertension.

Unlike Dr. Ranganathan, Dr. Perdomo noted that "no records were available for review." (R. 140). He recommended that Plaintiff "should be reevaluated by an orthopedic specialist and consideration to a pain management referral should be given, as well as orthotic to compensate the shortage of the left lower extremity." (R. 140). In the mean time, he felt Plaintiff could perform well in light duty work, avoid standing for more than three to four hours a day, bending, or lifting over fifteen pounds. *Id.*

Plaintiff presented to the emergency department at the hospital the following day for follow-up for her blood pressure, which was measured at 205/114 (R. 141-149). She was provided medication and her blood pressure was 145/69 on discharge. (R. 15).

A Residual Functional Capacity Assessment was completed by a state agency non-examining physician on September 13, 2001 (R. 150-57). Plaintiff was found to be able to walk two hours in an 8 hour day and sit about six hours. She could only occasionally climb, balance, stoop, kneel, crouch and crawl and was to avoid hazards such as machinery and heights (R. 152, 154).

Plaintiff presented to Apopka Family Health Center in November 2001, for hypertension management and complaining of hip pain (R. 162). On examination, left hip was tender, and reduced range of motion noted. Assessment was chronic left hip pain and uncontrolled hypertension when off medication. Plaintiff continued to complain of hip pain on return visit in December 2001 (R. 161), and back and hip pain in February 2002 (R. 158-59).

On March 5, 2002, Dr. Ranganathan reviewed an x-ray of Plaintiff's lumbosacral spine (R. 163).  No abnormalities were noted, save for the visible prosthesis and plate with the screws in the left pelvis.

A Residual Functional Capacity Assessment was completed by a state agency non-examining physician on March 16, 2002 (R. 164-71).  It indicated that Plaintiff could stand at least 2 hours and sit at least 6, in an 8 hour day, but she could never climb ladders, ropes and scaffolds and could occasionally climb ramps and stairs.  She was also to avoid concentrated exposure to hazards (R. 168).

Treatment notes from Apopka Health Center dated November 6, 2003, indicate that Plaintiff reported chronic hip pain and hypertension, and that she had been out of her medications for one year (R. 173).  Her blood pressure was 180/116.  One week later, on medication, Plaintiff's blood pressure had improved to 140/98 (R. 172).

Plaintiff appeared and testified at her hearing, regarding her pain and limitations.  She stated that she tried to go back to work at a daycare, but she couldn't stand and sit for very long (R. 199).  She stated that she had sharp pain in her left hip (R. 200), worse with rainy weather.  She stated that her blood pressure was under control, with medication (R. 202), but her back hurts.  As for activities, Plaintiff testified that she needs help getting out of the tub and can not grocery shop (R. 203).  She does light housework (cleaning the table off, putting a dish in the sink), she goes to the mailbox, walks outside for five or ten minutes, sits for about 30 minutes and lays down (R. 203).  She reads some (R. 204).  She stated that she can stand for 30 minutes, walk about 50 feet, and could lift a gallon of milk (R. 204-05).  She sometimes uses her cane to ambulate. (R. 205).

No vocational expert testified at the hearing.

In his determination, the ALJ found that Plaintiff has status post left hip arthroplasty and left tibia fracture with open reduction and internal fixation, a severe impairment, but not severe enough to meet or medically equal the Listings (R. 16). Plaintiff was found to have the residual functional capacity to perform a full range of sedentary work. (R. 20, Finding 11). The ALJ determined that Plaintiff's complaints of pain were not totally credible, and, applying the Medical-Vocational Guidelines, determined that Plaintiff was not disabled, as defined in the Social Security Act, at any time through the date of the decision (R. 19, 20).

### STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence

favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### ISSUES AND ANALYSIS

Plaintiff asserts as error: 1) that substantial weight was not given to the testimony of Dr. Ranganathan; 2) that testimony from a vocational expert should have been obtained; and 3) that the ALJ improperly discredited Plaintiff's allegations of pain.

### *The examining physician*

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not

-10-

warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).

Here, Plaintiff's treating physician was Dr. Cox, but the treatment records are well-removed from the relevant application date for SSI benefits.  Thus, the ALJ properly ordered consultative examinations.  While a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984), in this case, the absence of a timely treating physician's opinion[4] allows for the ALJ to substantially rely on the consultative opinions, as the only examination based medical evidence in the record.

Plaintiff takes issue with the ALJ's acceptance of Dr. Perdomo's opinion that Plaintiff was capable of light work over Dr. Ranganathan's opinion that, in essence, she was not.  It is not the task of this Court to weigh the evidence in the first instance, and choose between conflicting evidence.  That is the task of the ALJ.  Rather, it is the role of the Court to determine whether the finding of the ALJ (in this case, that Dr. Ranganathan's opinion is not supported by the objective evidence) is, itself, supported by substantial evidence and made in accordance with proper legal standards.  The Court finds that the ALJ's finding is so supported.

In discrediting the opinion of Dr. Ranganathan, the ALJ noted that the Plaintiff's lumbar spine x-ray was normal, and Plaintiff had full range of motion, save for the left hip and thoracolumbar

---

[4]The records of the Apopka Family Health Center are also treating physician records, but they were created after the date of application for benefits and they do not contain opinions as to Plaintiff's limitations, if any.

spine.  The leg fracture was healed and resolved, and neurologically, Plaintiff was intact.  Moreover, the opinions of the two non-examining physicians support the ALJ's finding.  While reasonable minds could differ in weighing the opinions of the two examining physicians,[5] the ALJ's decision to discredit the conclusion of one physician in favor of the other is adequately supported.

### *Pain and the vocational expert*

Plaintiff fares better on her next contentions.  In essence, she argues that the ALJ erred in not properly evaluating her allegations of pain and disabling limitations.  When properly credited, Plaintiff argues that her allegations establish a non-exertional impairment, which must be considered, with the assistance of a vocational expert, in determining if there is other work that Plaintiff can perform.  As these issues overlap, the Court discusses them in tandem.

### Pain

Pain is a non-exertional impairment.  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising

---

[5]Indeed, here, the ALJ would be justified in accepting either opinion.  The Court notes that Dr. Ranganathan performed a thorough examination and record review, while Dr. Perdomo did not review any of Dr. Cox's records, and Dr. Perdomo specifically noted that Plaintiff needed to be evaluated by an orthopedist.  Should the ALJ have found Dr. Ranganathan's opinion to be persuasive, under the deferential standard of review, the Court would affirm that administrative finding as it, too, would be supported by substantial evidence, and the Court may not re-weigh the evidence or substitute its own judgment for that of the ALJ, even if the Court finds the evidence to preponderate against the finding.  *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990).

from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

### When Vocational Expert Is Necessary

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant court perform other work that exists in the national economy.  *Foote, supra*.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"].  *Foote*, 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an

-13-

exertional impairment, without significant non-exertional factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987).  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  *Foote*, 67 F.3d at 1559.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.  *Foote*, 67 F.3d at 1559.

Applied here, the ALJ did not specifically address the pain standard, but did address the allegations of pain.  In his decision, the ALJ noted Plaintiff's sedentary lifestyle as being consistent with the medical evidence, acknowledged that her impairments "limit her activities such as heavy lifting or prolonged standing or walking," but concluded that "the clinical findings resulting from these impairments do not appear to be of a degree capable of producing pain or limitation of incapacitating proportions." (R. 17).  Citing Plaintiff's activities of daily living, the ALJ found Plaintiff's allegations of pain to be "out of proportion and inconsistent with the medical evidence and

are not fully credible." The Court agrees with Plaintiff that this finding is not sufficient to discredit *entirely* all of Plaintiff's allegations of pain and limitations resulting from that pain.

Plaintiff complained of pain to her treating physicians and *both* consultative physicians noted and credited her pain. In fact, Dr. Perdomo specifically recommended that Plaintiff be referred for pain management, as well as to an orthopedic specialist. There is no suggestion that Plaintiff was malingering, nor is there any evidence in the record to support a finding that Plaintiff's pain was not real or limiting. In short, while the ALJ may have correctly determined that Plaintiff's pain was not, in and of itself, severe enough to be disabling, such a finding does not mean that it is not an *impairment*, which causes some degree of non-exertional limitation.[6] Here, the ALJ did not evaluate (and made no specific finding) regarding the extent of Plaintiff's non-exertional limitation of pain, save for finding that it was not incapacitating. This is not enough to discredit the allegations entirely. *See Foote, supra*, 67 F. 3d at 1559 (noting that the ALJ is required to make "a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations."), *accord, Phillips v. Barnhart,* 357 F. 3d 1232, 1243-44 (11th Cir. 2004) (remanding due to the ALJ's failure to consider whether non-exertional limitations significantly limited claimant's basic work skills at the sedentary level). As noted in the same context:

> When considering whether to rely exclusively on the Grids however, the question is not whether the plaintiff's pain is independently disabling but whether it significantly affects non-exertional job requirements (such as concentration). The ALJ's finding fails to address whether the plaintiff's pain causes non-exertional limitations or whether any such limitations are of sufficient degree to preclude exclusive reliance

---

[6]The ALJ noted that Plaintiff's pain causes exertional limitations in lifting, standing and walking. This is not, however, an explicit finding that the pain acknowledged to exist does not also have a non-exertional component, such as fatigue (noted by Dr. Ranganathan).

on the Grids.  Nor does his decision contain the required statement as to the impact of the plaintiff's pain on the applicability of the Grids.

*James v. Barnhart,* 261 F. Supp. 2d 1368, 1374 (S.D. Ala. 2003).  Indeed, if ALJ's were only required to consider whether the pain was severe enough to be disabling, there would never be a need for vocational expert assistance, as that assistance is designed to help the ALJ determine the vocational effects of limiting, but not necessarily disabling, impairments.  The failure to evaluate to what extent Plaintiff's pain effects her ability to work warrants remand.

### CONCLUSION

The decision of the Commissioner was not made in accordance with proper legal standards and is therefore **REVERSED** and **REMANDED** for additional consideration and findings as to whether Plaintiff's pain significantly affects her ability to perform work and the impact of Plaintiff's pain on the applicability of the Grids, as set forth above.  If appropriate, testimony of a vocational expert should be obtained.  In so holding, of course, the Court makes no suggestion as to Plaintiff's entitlement to benefits.  Rather, the Court holds only that the ALJ did not engage in the appropriate process or make the appropriate findings before electing to rely exclusively on the grids.

The Clerk is directed to enter judgment in accordance with this opinion, terminate all pending matters, and close the case.

**DONE** and **ORDERED** in Orlando, Florida on November 10 , 2005.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

-16-